All right. Good morning, counsel. Morning. Welcome to our zoom arguments this morning. We have the case of Angel Brothers versus it was Scalia now it's Walsh as the respondent. We will first hear from the petitioners counsel. Yes, your honor. May it please the court. My name is Merrick Chastain. I represent the petitioner Angel Brothers Enterprises Limited. Pursuant to the policy underlying this court's decision in W. G. Yates and Sons, Angel Brothers should not be held liable for the OSHA citation at issue because the knowledge of its foreman, Alvador Badal, should not have been imputed to it. The secretary failed to meet his burden of proof by showing Mr. Badal's conduct was foreseeable and thus the citation should be vacated. Moreover, even if the court finds that the secretary met its burden, the citation still should be vacated because the evidence establishes that Angel proved the employee misconduct offense. This result is proper and correct because the sole reason and sole cause for the excavation violation at issue is the unforeseeable and rogue conduct and decision by Mr. Badal. Mr. Chastain, when OSHA, I meant to pull up the actual citation and I will if I need to, but when OSHA cited the company, did they cite it for what Vidal did or for what Fonseca did? They cited... Meaning, let me just, did they cite it because Vidal ordered somebody to do something wrong? Or did they cite the company because Fonseca was working outside a trench box? They cited the company because there was an employee, namely Fonseca, working in an unprotected trench, Your Honor. Okay, so that's where, and look, I think it's an interesting and maybe a difficult question to parse out exactly what Yates, what that exception means and how broad it is. And I would be inclined to agree with you more if we were talking about citing Vidal for something he himself did, as opposed to Fonseca. So why if, because they're citing Fonseca, why aren't we outside the Yates exception? I guess that's my main concern. Well, you know, in Yates, this court held that a supervisor's knowledge of his own malfeasance is not imputable to the employer, where the conduct is unforeseeable. Now, based on several policy implications from the OSHA Act, that the employer can only be held responsible for violations that could have prevented, that the act is designed to ensure worker safety only so far as possible, and that the employer's duty must be an achievable one. And so based on that, the same policy implications apply in this situation and should control the result. And I would direct you to the case from the 10th Circuit Capital Electric Line Builders. In that case, the company was cited because an employee failed to wear his electrocuted and died as a result. What the what the Court of Appeals in that case held is that although the actual act constituting the alleged violation occurred when the employee worked without the proper equipment, the thrust is that the violation occurred because of the supervisor's failure to provide adequate supervised supervision and warnings. And so based on that, the court held that the non-compliant behavior is the supervisor's own because had the supervisor properly instructed the employee, and in this case had the supervisor properly done what he had been directed and trained to do, the violation never would have occurred. And so the court, the 10th Circuit concluded, so the burden to show that the violation was foreseeable is borne by the secretary, not the employer. And that almost is on all fours with our case, Your Honor. I also would point out how do you distinguish Yates itself? In Yates, we said that we vacated the violation for the supervisor's own conduct of not wearing, I think it was fall protection, but we upheld the violations for his, the people he was supervising, that he saw he was there, he was, the supervisor knew that was going on. How do you distinguish the violations we upheld in Yates from your situation? Well, you know, one item, Your Honor, is that the violations by the subordinates were not appealed. So the court did not have reason to actually opine and render a holding on that issue. The only issue that was appealed was whether the supervisor's knowledge of his misconduct could be imputed to the employer. And so the court never truly reached the issue of whether the violations by the subordinates based on direction or acquiescence by the supervisor could fit within the parameters of what the court created in the Yates decision. And so that's the big, big factor because, you know, had the court evaluated that it's possible that, you know, this court could have come to a conclusion. But what you I think need to look at are the Calpine and the Deep South crane rigging cases from this, this court. In both cases, the court ended up concluding that the Yates doctrine was not applicable, but not because it related to a supervisor exposing a subordinate to a hazard. Basically, in Calpine, there were open four holes known to company management, they were created by a contractor, an employee fell through the hole and died. The court held that Yates was not applicable, because Calpine had never alleged that the supervisor at issue in this case was responsible for creating the hazard the employee was exposed to. So here, the only reason there was a hazard in the first place was because Vidal chose not to install a trench box and directed Fonseca, contrary to the instructions he had been training contrary to the policies. He directed Fonseca to enter the nonconforming trench. And let me ask you about that fact. You just said Vidal directed Fonseca to commit the violation basically by going into the trench. I read the commission, there seems to be a factual dispute where you're saying he was or Fonseca was ordered to do that. And then on the other side, there seems to be the argument that well, no, they just both agree Fonseca and Vidal just agreed, oh, we're going to do this. Who cares about those safety rules? And I view the commission as sidestepping. I think there's an opinion, it sidesteps that dispute because it says even it assumed in your favor that and said, even if Vidal directed it, we don't think Yates applies. And it's a it's a violation. Does your position depend or does require a factual finding that Vidal directed Fonseca to do this? No, it doesn't, Your Honor, because the bottom line is that Vidal was the supervisor, he was the foreman on the project, he had the most training and was responsible for the safety of the individuals working on that day. And the fact that even if he just authorized him, you know, this isn't a situation where there was a he was sitting by passively and and just observed an employee in the trench and did nothing about it. He actually, whether you take our position that he directed Fonseca to get in the trench, or that they discussed it, and then he said, Okay, I'm going to, you know, I think you I think you should get in the trench had he not approved it expressly as he did the the and and also decided not to install the trench box, the hazard never would have existed. But I also want to point out that that was Vidal's testimony at the hearing that we knew we discussed it, we mutually agreed that Fonseca is But what he told the compliance safety and health officer is that he directed him, he directed Fonseca to enter the trench, he directly told him that that's what the the OSHA inspector said. Additionally, during Mr. Porterfield, Mr. Porterfield is the health and safety director for Angel Brothers. During his actual investigation, that's expressly what Vidal told him. And that's why the decision was made. Okay, we're going to punish the person who's at fault, not the unwitting subordinate who was just following directions from his from his supervisor. But the bottom line, Your Honor, is that our argument does not depend on the fact that he expressly directed him. If they mutually agreed, he still authorized it. And that was when would Yates not apply in your situation? When would we not be in a Yates situation on this type of this type of work site this type of violation? When would Yates not govern? Okay, well, Yates certainly only comes into play when there's supervisor misconduct. You know, that's that is is a circumstance that truly rarely happens. I've never had a case until now, where the fact showed that the supervisor directly instructed or directly approved as opposed to just viewing. I, you know, encouraged basically encouraged a subordinate to violate a rule that that he knew was important and that he could be terminated for. So if Fonseca was just doing this, and they never talked about it, but now saw it happening, but didn't correct it. That would not that would not be a Yates situation. That's not a Yates situation, Your Honor, you know, there's the ordinary case, which is 99% of the cases in this context, where a subordinate engages in conduct that's contrary to the OSHA requirements, and the supervisor's there, and he doesn't do anything to stop it. Because whether he knows it's a violation or not, he just doesn't act. Yates really, you know, in based on my reading of it, it applies when the supervisor engages in malfeasance, and creates a situation where he's exposed to it, or his subordinates are, because he engaged in in he made a decision that he knows to be incorrect, that he knows to be contrary to his training, and that he knows to be contrary to the directions that he's been provided. It seems like it has agency principles backward. I mean, in the normal context, where you're looking at vicarious liability for an employer takes sexual harassment, which we get a lot of cases, you know, it's much easier to prove that vicarious liability when the supervisor is the harasser, as opposed to just a regular line worker. So it's odd. It seems like it's, it seems like the company should be more culpable when the supervisor is actively directing an underlings violation, but well, your honor, I would disagree with that simply because the policies underlying OSHA say that the responsibilities of the employer should be reasonable, should try to ensure employee safety so far as possible. And that's what the company did in this situation, they trained him, he had an unblemished safety record up until now. He, he had a, the safety audits, which are very in depth examinations of a job site for Mr. Vidal's crew were spotless and glowing, especially where it relates to excavation safety. But all that all that's true, even if Fonseca did this on his own without any supervisor liability, which you're saying what you would be responsible for. If Fonseca acted alone, and the hazard was not created by the actual supervisor who either directed him or expressly authorized him to do something that he knew was was totally contrary to his training and everything else, then then yes, I would agree that, you know, Fonseca is the is the is the issue here and the company would have addressed it differently. Because that's what I'm saying is odd. It's odd that this low level employee can make the company like it's easier to make the company liable for what a low level employee does. And when the supervisor engages in wrongdoing, but it's, and that's what the DC Circuit recently expressed, but it's, it's, you can go back to your argument. Normally, well, Your Honor, I'm, you know, you know, one of the arguments that the Secretary makes is that, you know, by expanding or applying Yates to to a situation such as this, that it's going to destroy the bedrock principles of agency, which you were just addressing. In this case, I mean, well, frankly, there are no bedrock principles of agency, there is a principle of agency principle, or principle agent, but there are numerous exceptions to it. The Yates doctrine has already exposed some of that several other circuits have as well, namely the fourth, the eighth and the 10th, as we saw earlier in the capital line reading case. But, you know, there are so many exceptions, you know, one of them is acting adverse to the company's interest. In this case, given his training, given the instructions provided, I would propose that Vidal was you know, they they're trying to ensure safety as best as possible. And they do so by training and and inspecting the excavation job sites on a daily basis, at least four days a week, and in most cases, five days a week. They, they enforce their policies when they detect that there are violations. And so, you know, in this situation, you know, even if, you know, going back to the opening that I made, even if the court finds that Yates does not apply, the Unpreventable Employee Misconduct Defense certainly does. The court, the commission erred by finding that, you know, Angel Brothers met the first three requirements, but then failed to establish that it effectively enforced its policies. There is no evidence that excavation violations are occur frequently and that they are unaddressed. We identified a foreman was previously issued a warning for violating the rules, later terminated for a second violation and Vidal was also issued a final written warning. So I present that Yates does apply, but even if it doesn't, the Unpreventable Employee Misconduct Defense does. Thank you. All right. Thank you, counsel. And you have time for rebuttal. We'll now hear from the government whenever you're ready. Good morning, your honors. May it please the court. I'm Louise Betts for the Secretary of Labor. The primary issue in this case is whether the supervisor's knowledge of the subordinates unsafe conduct is imputable to the employer. So I'll start there. This court has always applied the ordinary imputation rule in cases like this one, where the supervisor is aware that a subordinate has engaged in unsafe conduct. Because Mr. Vidal directed or allowed Mr. Fonseca to enter an unprotected trench, his knowledge of the violation is imputed to Angel under long standing precedent in this circuit, including the WG decision, and this court's recent decisions in Calpine Corporation and Southern Hens. The ordinary application of agency law in the OSHA context serves the critical purpose of holding employers responsible for their duty under the OSHA Act to ensure the safety of subordinate employees, even when they delegate that duty to an onsite supervisor. And the rule incentivizes employers to put the most responsible supervisors in charge of employee safety, because the employer will be held accountable if the supervisor shirks that duty under the OSHA Act to keep those subordinate employees safe. And at that point, the burden shifts to the employer to prove that the violation was unpreventable. In the Yates decision, this court adopted a narrow exception to the imputation rule where the supervisor's own unsafe conduct was the violative condition. In that case, the supervisor's own failure to wear fall protection. But Angel would have this court broaden the Yates exception to encompass every case in which a supervisor participates in the violation. And that would be a that would be a departure from Fifth Circuit precedent. Well, they would draw a distinction. As I understand the rule, they would advocate they're drawing a distinction between a situation where a supervisor orders or agrees to a violation on the one hand and situation where the supervisor only knows of and does not act upon the violation. Is that is that an expansion of Yates? Is it a workable rule? What's your reaction to that? So that would be an expansion of Yates. And that would expand Yates to include every situation in which a supervisor essentially participates in the violation. So the only cases that would be where the supervisor sort of happens upon a violation. So under that theory, the worse the supervisor behaves, the harder it is for the secretary to establish the violation. And that really conflicts with the whole purpose of imputation, which is to hold the employer responsible for the supervisor, but the employers delegated its duty under the OSH Act to ensure the safe working conditions of subordinates. Counsel opposite says that in unpublished decisions from our court, we have expanded the Yates exception, Deep South Crane, Calpine, I think are the two decisions. Is that is that right? No, Your Honor, I disagree with that characterization of those cases. So in Deep South, that case was pretty much on all fours with Yates. And that case, the violation was the supervisor's failure to ensure that a crane operator was qualified to operate the crane. So it wasn't a case where the violation was unsafe operation of the crane, for example, and the supervisor knew or authorized that the violation was actually the supervisor's own failure to ensure that the crane operator was qualified. So that is exactly consistent with the narrow reading of Yates that that the secretary urges here. Actually, Calpine Corporation is a case where this court declined to apply Yates even where a supervisor ordered a subordinate to do something unsafe. So in that case, a subordinate to perform electrical work on an elevated platform with unguarded floor openings. The supervisor knew about the unguarded floor openings when it wrote the work when he wrote the work order, the subordinate didn't. And when he saw the work order, he went up on the platform and he fell through one of the holes and died. The employer argued that the Yates exception applied and the secretary should have to prove the foreseeability of the supervisor's misconduct. But this court, albeit in an unpublished decision declined to expand Yates in that way because the violative condition wasn't the supervisor's own unsafe conduct. It was the unguarded floor opening to which the subordinate was exposed. And actually, the court explicitly stated in Calpine that Yates only applies to quote, situations where the supervisor himself engages in misconduct, unsafe conduct, sorry, close quote. And actually in a published decision in 2019, called Southern hens. In that case, this court did apply the usual imputation rule. And that case is directly directly conflicts with the Tenth Circuit holding in Capitol Electric. That was the case that opposing counsel filed in a 28 J letter last week. In that case, the court, the Tenth Circuit in a supervisor's constructive knowledge of a subordinates failure to use the proper equipment. But in Southern hens, this court did impute the supervisor's knowledge in that case, and that was a published decision. In that case, the supervisor failed to adequately supervise a subordinate employee who was doing something unsafe, cleaning the outside of a piece of equipment without locking it out. This court as a matter of constructive knowledge to the employer. And at that point, the burden shifted to the employer to defend itself as an affirmative defense by proving that the violation was unpreventable. Yet, despite the fact that the reasoning in the Yates decision and the recent precedent establishes that the ordinary imputation rule should apply in this case, Angel is asking this court to expand Yates to a case where a supervisor knowingly, hopefully exposed a subordinate employee to an unsafe working condition. And Angel's theory seems to be that it's unfair to hold the employer responsible in this situation. But there's nothing unfair about holding the employer responsible. When it tasked with the supervisor, the duty of keeping subordinates safe and the supervisor shirked that duty. That's just basic agency law. Under agents, Angel's theory, the worse the supervisor behaves, the harder it is to prevent the violation. And because supervisors set an example at the workplace, the employer has, if anything, quote, a heightened duty to ensure that supervisors are following company safety rules. Not only would Angel's proposed broadening of the Yates  protect the employee, but it would also undermine the purposes of the OSH Act, but it would also be cumbersome to administer. So in a case like this one, instead of the court simply asking, was the supervisor aware that the subordinate was doing something unsafe, the court will need to dig into, you know, did the supervisor happen upon the violation or authorize it or condone it or direct it or order it? Recent examples, raising similar issues are the Quinlan and Empire roofing cases in the 11th circuit and Calpine in this case. But as the 11th circuit held, it shouldn't matter under agency law, as long as the supervisor knowingly allows a subordinate to engage in unsafe conduct. It doesn't make any sense to hold the employer less responsible where the supervisor actively participates in a violation. But that's what Angel Brothers is asking this court to do. Keeping the Yates exception narrowed does make sense, because the ordinary imputation rule effectuates the core purpose of the OSH Act, and incentivizes employers to put only the most responsible supervisors in charge of on site safety. Turning to the second issue, regardless of whether the secretary has the burden of proving that the violations unforeseeable, as Angel argues, or whether the burden shifts to the employer to prove that the violation was unpreventable, the same four prong test applies and the fourth prong is not met here. Although the commission determined that the employer had trenching safety rules, a training program and that it monitored the work site for violations, the commission correctly concluded that Angel Brothers did not effectively enforce its safety rules when employees violated them. And under the substantial evidence standard of review, the question for this court is whether substantial evidence in the record supports that determination, whether a reasonable mind could conclude on this record, that Angel Brothers did not effectively enforce its safety rules. So the thrust of this inquiry under the fourth prong, the one that's missing here, is whether employees had reason to believe at the time of the violation, that they would be disciplined for violating the company's safety rule. The only evidence in this record that Angel Brothers has ever disciplined an employee for violating a safety rule was associated with a willful citation uncovered during an OSHA inspection in 2014. But evidence of violations discovered during OSHA inspections, I'm sorry, evidence of post inspection discipline is only relevant when And despite the fact that Angel Brothers bore the burden of proof on this element below, there is no evidence in the record that Angel Brothers has ever disciplined an employee outside the context of an OSHA inspection. So there's no evidence in the record to establish that this element is met. The fact is that Angel Brothers did issue written discipline for the two instances of discipline involved in OSHA inspections. So it must keep written records when it and it bore the burden of proof below, but it did not produce any evidence of any discipline against any other employees. And Angels claim that its employees just don't commit trenching violations when OSHA isn't there to discover them, which is essentially the thrust of their argument. That's just not plausible. First of all, its arguments are sort of internally inconsistent, because it argues on the one hand that its safety program is so good, employees don't violate its rules. But then at the same time, it argued in its brief that it quote, routinely disciplines and even terminates employees who failed to follow its safety rules, close quote. But there's no evidence that it's ever done that outside of an OSHA inspection. And even just looking at the prior OSHA inspections, the company had been cited five times in five years for violating the same standard. Two of the prior citations were repeat, one of them was willful, the present violation was willful. The company can't even demonstrate that it disciplined all of the employees involved in those prior violations. It only has evidence of one instance of discipline against one employee. And even in this case, the company didn't discipline the employee who engaged in the unsafe conduct. And it's no excuse that as Angel claims, the supervisor directed or authorized the violation. First of all, the company's own safety policies require subordinate employees to refuse to enter unprotected trenches and to report the violation of the management chain. And second of all, the lack of discipline of Mr. Fonseca actually sends the message to subordinate employees that they're free to violate safety rules, when their supervisor tells them they should. Just like in the Floyd S. Pike case, the company's safety program was quote, inadequate to prevent crew members from following their foreman's poor example, close quote. But because supervisors are supposed to be an example for responsible behavior, not a shield against OSHA liability, or a defense to discipline for violating safety rules. The fact that the supervisor authorized the violation shouldn't excuse the lack of discipline against the subordinate. And for all of these reasons, whichever party bears the burden of proof, Angel's responsible for the violation. Turning to the last issue, the violation was properly classified as willful. A violation is willful where the company has a heightened awareness of the requirements, and either consciously disregards  safety. There's no question that the company had a heightened awareness here because they had two prior repeats and one prior willful violation of the very same standard. It's an excavation company. And Mr. Vidal admitted that he willfully violated the standard. He consciously disregarded the standard to get the work done faster. And he exhibited a plain indifference to employee safety by allowing Mr. Fonseca to enter the unprotected trench. Mr. Fonseca could have died in that trench, and Mr. Vidal stood by and watched him work in it. For all of the same reasons that the company's charged with the foreman's knowledge of the violation, it's also charged with his willful violation of the standard. All right, counsel, we have your argument. Thank you. We'll now hear a rebuttal. Thank you. You need to unmute. I think you need to Okay, sorry about that. I'm still getting accustomed to this, unfortunately. I wanted to address one of the one of the first points that the Secretary made and that we're advocating is that the worse the supervisor acts, the harder it is for the Secretary to prove a violation. That is not at all the case. Because, you know, even in the Yates context, whether the company is liable or not, or whether, you know, the knowledge of the supervisor should be imputed to the company is tempered by the issue of foreseeability. I mean, if it is rampant, that a supervisor normally, you know, customarily works in violation side by side with his subordinates, the chances are that this is likely to be a foreseeable violation. And that's exactly what the the this court held and in the bird the bird case, which is cited in the Secretary's brief. And that is, you know, all the elements are met. However, in that particular case, there was evidence that the the employer safety program was not feasible, and therefore it was not Yates and found that it was foreseeable. Additionally, in the Deep South crane rigging case that was mentioned a moment ago, the, you know, it was a situation where the supervisor failed to train and ensure the employee was qualified to operate a particular type of crane. However, what the court found is that in actuality, the employer didn't say, train this guy, make sure he's qualified. They just told the supervisor to familiarize the employee with the crane. So in this case, the court held that the instructions were not sufficient sufficiently definite to communicate to the supervisor the need to fully train and qualify the employee. And thus it was foreseeable for the supervisor not to fully train and qualify the employee. So in both the cowpine case, which was addressed earlier, and the Deep South crane rigging case, the facts didn't present themselves to be applied to the the successfully applied to the Yates doctrine. However, with the correct facts, we have, unlike in cowpine, there is direct evidence that the only reason there was a hazard is because of the Dallas actions, number one, and in Deep South crane rigging, the rules and direct instructions from the field safety manager, Mr. Bennett the day before, could not have been more clear. So this is the case that I think the the unlike cowpine, unlike Deep South crane rigging, where the the court can actually effectively address whether Yates applies and whether it's satisfied. Additionally, I wanted to address this issue of the unpreventable employing misconduct offense and foreseeability based on the lack of effective enforcement of ANGEL's safety policies. To get to this conclusion, inference upon inference must be piled upon itself, evidence must be ignored, and unwarranted assumptions must be made. And I say that because the commission as well as the secretary disregards much of the testimony by Brad Porterfield, ANGEL's health and safety director, when he testified unequivocally and an uncontroverted that the company routinely disciplines and even terminates on if appropriate employees for safety violations. So what the secretary contends is that the secretary insists that, okay, in order to establish that you actually discipline anybody, you have to present documentary evidence, whether it relates to this particular issue that we're we're in court about today or something else. That there's no doctrine out there that that says that the testimony of a high ranking safety professional becomes worthless simply because arguably irrelevant documentary documentary evidence also was not provided. As far as whether it's worthless or not, but the fact finder always gets to decide what evidence it credits and what evidence it doesn't. So why is this different than just that this fact finder function? Well, the difference is that there was no evidence submitted by the secretary, that there were violations that that were left uncorrected or unaddressed, undisciplined, unenforced. Just as a practical matter, what employer feels compelled to document the reason for termination of people? If you've got a union or something, you may have a proceeding. But if if somebody is down there digging ditches, and they don't follow the safety rules, you just tell them don't come back tomorrow, do you not? A lot of times that is what what what occurs because when when people are summarily discharged for a severe safety violation or summarily discharged for some other issue, a lot of times they will tell them don't come back, we don't need you anymore. And that's it. And I don't want to take an extra lot of time. But also the where is it in substantial evidence that the secretary gets to make discredit a company witness without any basis for making exactly the opposite factual finding? Well, that that's my point as well, Your Honor, because what we did provide in terms of in addition to the testimony documentary evidence was that Jaime Hernandez, a former foreman, he was first disciplined for violating the excavation safety rule, when he did it a second time, and we discovered it just happened to be in connection with an OSHA investigation, he was terminated, and we submitted that his termination form indicates that he was issued written or verbal warnings prior to being terminated. And then we also provided the final written warning for Salvador Vidal. There's simply no evidence that the secretary provided that there are violations out there that are not corrected. And that, in essence, is why Mr. Vidal's conduct can't be determined to be foreseeable under the Yates Doctrine and also fits right within the employee misconduct defense that we established. Thank you. Thank you. Thanks to both sides for the argument. The case is submitted. You may be excused from zoom and that ends this sitting of the court. Thank you, Your Honors. Appreciate your time today.